### THE JOHN I. BRADY.

### THE WILDCROFT.

#### (District Court, E. D. Pennsylvania. April 2, 1902.)

#### Nos. 18 and 19 of 1901.

COLLISION—STEAMSHIP AND TUG WITH TOW MEETING—APPROACHING TOO NEAR BEFORE CHANGING COURSE.

A steamship and a tug both *held* in fault for a collision between the ship and barges in tow of the tug, which occurred on the Delaware river in the night, on the ground that, although the two vessels saw each other when a mile apart, each held its course, and approached head on, until they were so close together that the danger of collision between them was imminent, and in the haste thus made necessary there was a confusion of signals, which brought about the collision.

In Admiralty. Suits for collision.

Curtis Tilton and Robert H. Smith, for the Bertie and Maud and the Calvert.

Henry R. Edmunds, for the John I. Brady.

Convers & Kirlin, for the Wildcroft.

J. B. McPHERSON, District Judge. These two libels are brought upon behalf of the schooner barge Bertie and Maud and of the barge Calvert, respectively, against the tug John I. Brady and the steamship Wildcroft, to recover damages for a collision on the Delaware river in the early night of March 19, 1901, by which both barges were injured. The libelants declare that the tug and the steamship were alike negligent, while each of these vessels endeavors to lay the whole burden of liability upon the shoulders of the other.

The collision occurred under the following circumstances: The tug was proceeding northwardly up the river, not far above the city of Wilmington, having in tow four barges in two tiers. The first tier was composed of the Bertie and Maud and the Calvert, lashed together, the Bertie and Maud being upon the port side of the Calvert, and the second tier was composed of the barges Prevost and Enterprise. The length of the tug and tow was between 550 and 600 feet. The collision occurred at about 10 minutes past 8, upon a night that was dark, but not misty or foggy. There was nothing to prevent an observer from seeing the lights of an approaching vessel at a distance of at least two miles, and probably farther. The tide was flood, and at the point where the collision took place the channel course was straight and free from obstructions. No other vessels were in the neighborhood of the steamship or of the tug and her tow. The Wildcroft is a large steel ship, 315 feet long, and was drawing 21 feet 6 inches. She was on her way down the

Delaware, bound for sea, in charge of a licensed pilot. Both vessels had the proper lights set and burning. The lights upon the tow were placed in accordance with rule XI adopted by the board of supervising inspectors, which provides that, "when two or more boats are abreast, the colored lights shall be carried at the outer sides of the bows of the outside boats." The Bertie and Maud carried a red light upon her port bow, and the Calvert carried a green light upon her starboard bow, neither barge showing any other side light. The steamship and the tug approached each other nearly head on, both being westward of the channel course. Each vessel had a proper lookout, and each saw the other more than a mile away. If the proper maneuvers had been executed, I have no doubt that a collision would have been avoided, for there was abundant room and depth of water in the channel for both vessels, and, if they had taken due precautions, the accident would not have happened. A strong wind was blowing from the northeast, and it may be that this may have had some part in preventing the steamship from hearing the tug's signals. As usual, it is impossible to reconcile the contradictory accounts of the witnesses that were called by the respective vessels, and I shall not attempt to discuss the two theories in detail. I do not accept either of them as a whole, for it seems clear to me that the collision can be explained much more simply and more probably than by following either as if it were completely true. The tug and her tow were certainly upon what would ordinarily be the wrong side of the channel, and, although there seems to be a more or less prevailing custom for tugs with their tows to take the western side of the river at this point, I do not think the custom is sufficiently established to furnish an adequate excuse. Unquestionably, if the tug upon this occasion had been upon the right-hand side of the channel, there would have been no collision, and upon that side I think she should have been. It was a fault in the tug to have been in the wrong place; but, aside from this, I think it is plain that each vessel was to blame for holding a nearly head-on course too long. The evidence satisfies me that each held this course until they came so near each other that, unless signals were precisely and promptly made and obeyed, there was great danger of collision. This, as it seems to me, is the true explanation of what happened. In the darkness of the night they came closer to each other than either vessel supposed the distance to be; and, when the true situation was recognized and each realized the unexpected peril, a not unnatural confusion of signals occurred, neither vessel being quite certain what was best to be done, or what the real intention of the other might be. There is the usual conflict of testimony concerning the color of the lights that could be seen from the respective vessels; and I have little doubt that toward the last, when it was impossible to avoid the collision, the conflict may perhaps be explained by the fact that each vessel changed its course in the hope of escaping the impending disaster. At this stage of the affair it would be useless to apportion the blame, if accurate apportionment be possible The initial fault, as it seems to me,—a fault for which both vessels are equally liable,—was in

approaching each other head on, too close for safety. Apparently each vessel either expected the other to give way, or was confident that the passing could be safely accomplished on the course that each was holding; the result being that when the final effort to pass was made there were mistakes on both sides, in consequence of which the two barges were injured. Immediately before the collision took place the tug, by a desperate sheer to starboard, barely escaped the steamship, which broke the hawser leading from the tug to the Bertie and Maud, and struck its starboard bow against the port side of the barge's stem, forced its way between the two barges, breaking several of the breast lines by which they were attached to each other, and struck the port bow of the Calvert, doing injury to that boat also. Some of the witnesses for the steamship testified that her way had been stopped before the collision took place, and that she was actually going astern; but, considering the extent of the injury that she inflicted, this testimony seems to me to be unreliable.

For the reasons given, I am of opinion that both the tug and the steamship were at fault, and that each of the barges is entitled to recover from both. As I understand, it is not seriously contended that the barges were guilty of negligence; but, if such a position is really taken, I have no difficulty in finding that they were free from blame.

In each case a decree may be entered in favor of the libelant.